Benjamin NEVILL; E.H. Bruist; J.W. Books; T.D. Imgrund; J.A. Pryor; G.M. Webster, Plaintiff–Appellant,

v.

**SHELL OIL COMPANY,**
Defendant–Appellee.

No. 86–5776.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1987.

Decided Dec. 23, 1987.

L. Chris Butler, Houston, Tex., for defendant-appellee.

Before WALLACE, SCHROEDER and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants, six former employees of appellee Shell Oil Company ("Shell"), filed an action against Shell alleging violations of the Employee Retirement Income Security Act ("ERISA") and raising several state law claims based on Shell's having denied them severance benefits after a corporate move. The district court held that ERISA applied, that ERISA preempted the state law claims, and that, under ERISA, the denial of severance benefits to appellants was not arbitrary and capricious. We affirm.

## BACKGROUND

In January 1979, Shell's Western Exploration and Production Region maintained offices in Denver, Colorado; Midland, Texas; Ventura, California; and Traverse City, Michigan. In March 1979, Shell announced that these offices would be closed and their staffs transferred to Houston, Texas. The employees at all four offices were told of the planned relocation in a memorandum dated March 22, 1979. An attachment to the memorandum indicated that certain qualified employees who chose not to move to Houston would receive a "Special Separation Allowance." The attachment stated:

> In view of the time lag between the announcement and actual relocation, manpower shortages could develop if affected employees leave the company prematurely. To minimize this problem, a program of Special Separation Allowance has been established for certain affected employees who are terminating or retiring and who remain until their services are no longer required.

Shell operates a Special Staff Redundancy Program ("SSRP"), which allows Shell management to offer severance benefits deemed necessary to make workforce adjustments "caused by a need to change workforce levels, improve the efficiency of the workforce, or relocate staff in conjunction with Shell facility closures or geographic consolidation of activities." The SSRP is designated an ERISA plan in internal corporate documents.

Shell's Denver and Midland offices were closed in 1979, and the qualified employees in those offices who chose not to move to Houston were paid the Special Separation Allowance. In April 1980, Shell announced to the Ventura staff that the transfer of the Ventura operation to Houston would take place in July 1981. Because California business improved, however, Shell announced to its employees in November 1980 that the Ventura office would remain open. Shell management decided, without telling the staff, that it would review annually the question whether the Ventura office should remain open.

On April 1, 1982, Shell announced that the Ventura office would close and that the Ventura employees would be transferred to Bakersfield, California. Shell stated that employees who chose not to move to Bakersfield would receive no Special Separation Allowance.

Appellants were long-time employees of Shell, each of them having been employed at Shell's Ventura office for more than thirty years. When the Ventura operation moved to Bakersfield, appellants elected to remain in Ventura. They applied for severance benefits in December 1983, and Shell denied their applications in March 1984.

Appellants brought suit in federal district court, alleging violations of ERISA and raising state law claims of breach of contract, fraud, and breach of the covenant of good faith and fair dealing. Appellants' request for a jury trial was denied. After a two-day bench trial, the district court ruled in favor of Shell, holding that the severance pay at issue was subject to ERISA, that the state claims were preempted by ERISA, and that the denial of benefits on the move to Bakersfield was not arbitrary and capricious.

## DISCUSSION

### A. Applicability of ERISA

The district court found that the Special Separation Allowance was offered as part of Shell's Special Staff Redundancy Program. This is a finding of fact, reviewable under the clearly erroneous standard. Fed. R.Civ.P. 52(a). If the SSRP is an ERISA plan, the finding that the severance payments were offered under the SSRP means that they are governed by ERISA.

■ The finding that the Special Separation Allowance was part of the SSRP is not clearly erroneous. The SSRP authorizes the offering of severance benefits in situations like the proposed move to Houston, in which labor market conditions require severance benefits to ensure that employees remain on the job until they are no longer needed. In addition, when the Denver and Midland offices were closed, their employees received severance payments that were administered under the SSRP. Because the proposed move of the Ventura office to Houston was far off in the future, the administrative provisions of the SSRP were never applied in the present case. Still, the pattern established with the Denver and Midland offices indicates that the SSRP would have been the means used by Shell to implement the Ventura office's Special Separation Allowance. Thus, we affirm the district court's holding that the Special Separation Allowance was offered under the SSRP and therefore is a plan governed by ERISA.

### B. ERISA Preemption of State Claims

The district court's decision that ERISA preempts appellants' state law claims is a conclusion of law and is reviewable de novo. *U.S. v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984).

ERISA, at 29 U.S.C. § 1144(a), states that its sections "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." "State law" is defined as "all laws,

decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

■ ERISA's preemptive scope is broad, but not all-encompassing. *Martori Bros. Distribs. v. James–Massengale*, 781 F.2d 1349, 1356 (9th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986); *see also Pilot Life Ins. Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Kanne v. Connecticut General Life Ins. Co.,* 819 F.2d 204, 205 (9th Cir. 1987). Thus, any state claims that "relate" to ERISA are preempted, so long as the relationship is not "too tenuous, remote or peripheral." *Shaw v. Delta Airlines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). We have stated that state law is preempted "if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan'; that is, the state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans." *Martori Bros.,* 781 F.2d at 1358.

■ Under this standard, appellants' state claims of breach of contract, breach of the covenant of good faith and fair dealing, and fraud are all preempted. In *Scott,* all of these state claims were raised and were deemed preempted by ERISA insofar as they involved benefits relating to past employment. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1505–06 (9th Cir.1985). Here, as in *Scott,* all of the state claims relate to enforcement of the benefit plan; all represent appellants' attempt to force Shell to provide severance benefits. As such, we hold that they are preempted.

### C. Denial of Severance Benefits as Violations of ERISA

Appellants contend that if ERISA applies to the Special Separation Allowance, Shell's failure to provide them with severance benefits violates ERISA. Because, as will be explained below, the critical question is whether the denial of benefits was arbitrary and capricious, the district court's conclusion that Shell did not violate ERISA

is a question of law, reviewed de novo. *McConney,* 728 F.2d at 1201.

The basic rule in this circuit is that "decisions by the trustee of an employee benefit plan will not be reversed by the courts unless they are arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Malhiot v. Southern California Retail Clerks Union,* 735 F.2d 1133, 1135 (9th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). The arbitrary and capricious standard applies in this case.

■ Shell's denial of the Special Separation Allowance to its employees once the Houston move was cancelled was clearly not arbitrary and capricious. The SSRP authorizes the payment of severance benefits only as a means of maximizing Shell's efficiency. Shell's decision to provide benefits on the Houston move was based on its assessment of the realities of the job market: Without severance pay, the Ventura employees who wished to remain in Ventura would abandon ship at Shell as soon as another job came along, and jobs were plentiful. Shell's subsequent decision not to provide severance benefits on the move to Bakersfield was based on its assessment that with fewer jobs available in Ventura, nontransferring employees would be more likely to remain at the Ventura office until it closed, even without a special monetary incentive. Because efficiency did not require severance pay on the move to Bakersfield, Shell was entitled under the SSRP not to provide severance pay. Therefore, we affirm the district court's finding that the denial of benefits was not arbitrary and capricious.

### D. Denial of Jury Trial

The trial judge's decision to strike plaintiff's demand for jury trial will be reversed upon a showing of abuse of discretion. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1357 (9th Cir.1984).

■ The district court did not abuse its discretion when it denied appellants a jury trial. Because all of the state claims are

preempted, ERISA is the only law governing this case. We held in *Blau* that in ERISA actions there is no independent constitutional or statutory right to a jury trial. *Blau,* 748 F.2d at 1357. Thus, we uphold the denial of a jury trial.

AFFIRMED.