Tommie F. THOMAS, Plaintiff,

v.

**CONTINENTAL CASUALTY CO., et al., Defendants.**

**No. CV 96–7599 LGB (CTx).**

United States District Court, C.D. California.

Jan. 6, 1998.

---

Daniel S. Gruber, Glenn R. Kantor, Gruber & Kantor, Encino, CA, for Plaintiff.

Robert F. Keehn, Galton & Helm, Los Angeles, CA, for Defendants.

BAIRD, District Judge.

## I. INTRODUCTION

The parties' Motions in Limine came on regularly for hearing at a telephone conference on January 6, 1998. Having reviewed all pertinent papers on file and considered the oral argument of counsel, for the reasons set forth below the court hereby GRANTS Plaintiff's Motion in Limine re: Standard of Review, DENIES Plaintiff's Motion in Limine re: Introduction of Evidence Not in Administrative Record, GRANTS Plaintiff's Motion in Limine re: Scope of Court's Determination, and GRANTS Defendants' Motion in Limine re: Introduction of Evidence Not in Administrative Record.

## II. BACKGROUND

Plaintiff Tommie Thomas has sued Defendants Continental Casualty Company ("CNA"), et al. alleging that CNA has wrongfully terminated her ERISA long-term disability benefits. On September 30, 1997, Plaintiff filed three Motions in Limine. These are to:

1) Determine that this Court will review CNA's denial of Plaintiff's benefits under a de novo standard;

2) Permit the introduction of doctor's reports not contained within the administrative record; and

3) Limit the scope of the Court's review to the first 24 months of Plaintiff's disability, remanding to CNA to determine eligibility for benefits beyond that period should the Court find that Plaintiff was wrongfully denied benefits.

On November 17, 1997, Defendants filed an Opposition to Plaintiff's Motions in Limine, and filed their own Motion in Limine seeking to exclude all evidence not contained within the administrative record. On November 24, 1997, the pre-trial conference was held, at which counsel for both parties presented oral arguments on the Motions. The Court took the Motions under submission, setting a telephone conference for December 5, 1997 to discuss settlement and to rule on the Motions. Shortly before the scheduled telephone conference, Plaintiff faxed a letter brief to Chambers raising two additional arguments on the Motions. The Court set a briefing schedule for these two arguments, pursuant to which Plaintiff filed a supplemental brief on December 10, 1997, and Defendant filed a supplemental opposition on December 17, 1997. Plaintiff chose not to file an optional supplemental reply, and a telephone hearing was subsequently held on January 6, 1998.

## III. ANALYSIS

### A. Standard of Review

The first issue faced by the Court in this case is whether to apply an abuse of discretion or a de novo standard of review to CNA's determination denying benefits to Plaintiff under the Plan. However, before reaching the merits of the standard of review issue, the Court must first address Plaintiff's collateral estoppel argument.

#### 1. Collateral Estoppel

Plaintiff argues that a previous case involving Defendant, *Duncan v. Continental Cas. Co.*, 1997 WL 88374 (N.D.Cal.), has already determined that the proper standard of review is de novo; consequently, Plaintiff argues, Defendant is collaterally estopped from relitigating this issue.

 The doctrine of non-mutual offensive collateral estoppel arises when a plaintiff attempts to prevent a defendant from relitigating an issue that the defendant has already litigated and lost in an action with someone else. *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir.1997). In order for the doctrine to apply, the issue to be foreclosed in the latter litigation must have been litigated and decided in the former case. *Id.*

Moreover, the estopped issue must be *identical* to the issue decided in the earlier case, and the burden of showing this is upon the party asserting collateral estoppel. *Steen v. John Hancock Mutual Life Ins. Co.,* 106 F.3d 904, 912 (9th Cir.1997) (emphasis added). "If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue." *Id.* (internal quotation omitted).

■ Although the Court has some concerns about the propriety of applying nonmutual offensive collateral estoppel in situations such as this one, these need not be addressed here, because it is plain that Plaintiff has not met her burden of showing identity of issues. First, Plaintiff admits that she can not verify that the language of the plan in *Duncan* was identical to the language in her Plan here. (Pl.'s Supp.Brief at 2 n. 1.) More importantly, the *Duncan* court based its whole finding of de novo review on its conclusion that the plan language requiring "written proof" [1] be submitted does not confer upon the administrator the discretion required for abuse of discretion review. *See Duncan,* 1997 WL 88374 at *4. As will be discussed below, this Court focuses not on the "written proof" language of the policy, but rather, on different plan language addressing review of a claimant's qualification for other employment. There is no indication in *Duncan* that the policy there even contained this language, and the *Duncan* court certainly did not address this language in its opinion. Thus, the issue presented to this Court is not identical to the issue decided in *Duncan.* Consequently, Defendant is not collaterally estopped from litigating the standard of review in this case.

## 2. Standard of Review Analysis

Although ERISA itself does not expressly specify the standard of review to be applied by district courts in reviewing challenged denials of benefits, the Supreme Court addressed this issue in *Firestone Tire & Rub-*

*ber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Court held that a denial of ERISA benefits in cases like the one at bar is "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Id.* at 115, 109 S.Ct. 948. Thus, the proper standard of review turns exclusively on whether or not CNA had discretionary authority under the terms of the Plan.

No particular "magic" word need be used in the Plan in order to confer sufficient discretion on the administrator or fiduciary for the abuse of discretion standard to apply. *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305–06 (5th Cir.), *reh'g en banc denied,* 20 F.3d 471 (5th Cir.1994). Rather, the focus is solely upon the administrator's discretion as given by the Plan's language. In attempting to show that the Plans at issue here conferred sufficient discretion, CNA relies heavily on *Snow v. Standard Ins. Co.,* 87 F.3d 327 (9th Cir.1996).

As in the case at bar, *Snow* involved an employee suing to recover ERISA long-term disability insurance payments that the claims review administrator insurance company had determined she was not entitled to. The Ninth Circuit stated that:

> We have not been stingy in our determination that discretion is conferred upon plan administrators. That is sensible because a proper and efficient functioning of an ERISA plan does often depend upon the use of discretion by the plan fiduciaries. As we have pointed out, a plan does confer discretion when it [i.e. the Plan] includes "even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator."

*Snow,* 87 F.3d at 330 (quoting *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1325 (9th Cir. 1992)).

In *Snow,* the plan provided that "there will be no benefit payment unless Standard is

---

**1.** The fact that the *Duncan* court addressed only "written proof" while the policy at issue here contains the phrase "due written proof" suggests that the language in the two plans was not really identical.

presented with *what it considers to be satisfactory* written proof of the claimed loss." *Id.* at 330. This language clearly provided Standard (the plan administrator) with discretion to determine what proof of loss is satisfactory. *See also Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1321 (9th Cir. 1995) ("[the administrator] shall be the sole and exclusive judge as to whether or not a termination is qualified for benefits under [the plan]"); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 379 (7th Cir.1994) ("[a]ll proof must be satisfactory to us [the Administrator]"); *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1305 (5th Cir.1994) ("[t]he decisions of the Plan Administrator shall be final and conclusive with respect to every question which may arise relating to either the interpretation or administration of this Plan"); *Taft v. Equitable Life Assur. Soc.,* 9 F.3d 1469, 1471 (9th Cir.1993) (the administrator had discretionary authority to "construe and interpret the Plan, decide questions of eligibility and determine the amount, manner, and time of payment of any distributions"); *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1324 (9th Cir.1992) ("[t]he determination ... will be made by [the administrator] upon consideration of whether the new position ... has responsibilities similar to those of your current position"); *Bali v. Blue Cross and Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir. 1989) ("on the basis of medical evidence satisfactory to the committee").

Thus, in all of these cases the plan language expressly gave the administrator discretion to conclusively determine something. This grant of discretion was unambiguous from the language of the plans. Therefore, in deciding what the correct standard of review is in this case, the Court must examine the Plan language and determine whether it grants CNA discretion.

CNA points to three Plan passages as conferring discretion. These are:

1) "We agree with the Employer to insure certain eligible employees ... [and] We promise to pay benefits for loss covered by this policy in accordance with its provisions" (Kurzon Decl. Ex.B. p. 1.)

2) "Benefits will be paid monthly immediately after We receive due written proof of loss" (Kurzon Decl. Ex.A. p. J.)

3) "You are considered totally disabled and eligible for total disability benefits: ... After the first 24 months of benefit payments if you are unable to perform the duties of any occupation for which you are or become qualified by education, training, or experience. When evaluating your qualifications for employment, the skills, responsibilities, income, and degree of social acceptance of your job prior to disability are considered.[2]

These will be addressed in turn. CNA's first contention is that the language requiring it to pay benefits in accordance with the Plan provisions confers discretion, because in so doing, CNA has to apply the Plan provisions. However, this argument is entirely without merit. Presumably, Plan Administrators are always required to pay benefits in accordance with Plan provisions; the Court imagines that Plans do not often allow Plan Administrators to pay benefits in violation of Plan provisions. In short, this language does not confer discretion.

CNA's second contention is that the language requiring "due written proof of loss" is sufficient to confer discretion, because CNA has discretion to determine what constitutes due proof. CNA equates this "due proof" language with the "proof it considers satisfactory" language of *Snow.*

At oral argument, CNA directed the Court's attention to *Bollenbacher v. Helena Chemical Co.,* 926 F.Supp. 781 (N.D.Ind. 1996). In *Bollenbacher,* the policy required

---

2. In her supplemental brief, Plaintiff argues that because this language comes from the Summary Plan Description ("SPD"), and not from the actual policy of insurance, it cannot be considered in making the *Firestone* discretionary analysis. (Pl.'s Supp.Brief at 7 n. 3.) This argument lacks merit. An SPD is the only written document specifically required by ERISA, and provisions contained therein are binding, and in fact, take precedence over other, conflicting documents. *See Krishan v. McDonnell Douglas Corp.,* 873 F.Supp. 345, 350–51 (C.D.Cal.1994). Although *Firestone* spoke of "benefit plans," 489 U.S. at 115, 109 S.Ct. 948, an SPD is thus considered part of a benefit plan.

"proof" of disability be submitted to the Plan Administrator. The mere use of the word "proof" was held sufficient to confer discretion upon the Administrator and require the abuse of discretion standard. However, this appears to be a tortured reading of the Plan's language, especially when compared to the language in the cases described above. In those cases, the plan language at issue expressly provided for the subjective satisfaction of the plan fiduciary. In *Bollenbacher*, the plan language only required the insured to furnish a proof of claim to the Administrator, without specifying that the Administrator has to be subjectively satisfied by such proof. The plan language at issue there might well require only objective satisfaction; i.e., whether a reasonable person would be satisfied. Such language simply does not show that "the power to apply that [discretionary] element is unambiguously retained by its administrator." *Snow v. Standard Ins. Co.*, 87 F.3d 327 (9th Cir.1996).

Additionally, under *Bollenbacher*'s analysis it is hard to imagine any plan in which de novo review would apply. Insureds always furnish their proof of claim to the plan administrator. Without more, this fact alone can not require abuse of discretion review, or else *Firestone's* holding that de novo review is to be used *unless* the plan gives the administrator discretionary authority would be meaningless. Consequently, this Court disagrees with *Bollenbacher* that the use of the word "proof" confers sufficient discretion for the abuse of discretion standard to apply.

This conclusion is bolstered by other recent court decisions involving the same Plan language as was at issue in *Bollenbacher*. For instance, in *Williamson v. Unum Life Ins. Co. of America*, 943 F.Supp. 1226 (C.D.Cal.1996), involving the identical Plan language of *Bollenbacher*, Judge Pregerson denied the Administrator's motion for partial summary judgment that abuse of discretion was the correct standard of review, and in fact, granted partial summary judgment sua sponte to the insured that de novo was the appropriate standard of review. This Court expressly agreed with *Williamson* in *Aberle v. Integrity Life Ins. Co., etc. et al.*, Case No.

CV 96–8597 LGB (C.D.Cal. October 20, 1997).

It is true that the language in the case at bar requires "due proof," not just "proof." This language makes it a closer case. In *Patterson v. Caterpillar, Inc.*, 70 F.3d 503 (7th Cir.1995), the court held that discretion was conferred by plan language that "benefits will be payable only upon receipt [by the Administrator] of such notice and such due proof, as shall be ... required." *Id.* at 505. However, the court merely stated in a conclusory fashion that this language was similar to that of *Donato* and *Bali*. But, as shown by the quotation of the language from those cases above, the *Patterson* language is not particularly similar. Both *Donato* and *Bali* required subjective satisfaction of the Administrator. The language in *Patterson*, like the language here, is not so clear. Moreover, the language in *Patterson* included "as shall be required [presumably by the Administrator]." Thus, *Patterson*'s language was somewhat more discretionary than the language at bar. For these reasons, this Court holds that the language "due proof" does not show that "the power to apply that [discretionary] element is unambiguously retained by its administrator." *Snow v. Standard Ins. Co.*, 87 F.3d 327 (9th Cir.1996). Thus, it is insufficient to require the abuse of discretion standard.

CNA's third contention is that the language addressing review of a claimant's qualifications for other employment confers discretion, because CNA must evaluate the claimant's qualifications based on skills, responsibilities, income, and degree of social acceptance of the claimant's job prior to disability. The Court finds that this argument has merit, but as will be explained below, it does not carry the day for CNA.

An evaluation of nebulous factors such as degree of social acceptance of a job is necessarily discretionary. Thus, so long as this discretionary determination is reserved to CNA, the abuse of discretion standard of review applies.

Plaintiff argues that under the Plan, it is the claimant's physician that has the discretion to determine disability; CNA's role is merely ministerial. Plaintiff relies on the

language that "Normally, your own physician determines the degree of physical impairment caused by the disabling condition." (Kurzon Decl. Ex.A. p. 6.) However, this language by its terms only grants the treating physician the authority to [normally] determine a claimant's *degree of physical impairment.* It does not purport to vest in the physician the discretion to determine whether the claimant is *disabled* under the terms of the Policy, and entitled to benefits. Such a determination requires consideration of several factors besides a claimant's degree of physical impairment, including the claimant's qualifications for other employment. There is nothing in the Policy to suggest that a claimant's physician is empowered to make this determination; rather, it is clearly CNA that makes this decision, after considering the treating physician's determination of the claimant's degree of physical impairment. Hence, CNA has discretion under the Plan to make this determination.

However, the case at bar involves disability benefits during the first 24 months of disability, which do not depend on the claimant's qualifications for other employment, but rather their ability to perform their own occupation. This Court's first Tentative Order reasoned that it did not matter that the discretionary element in the Plan was not one that CNA applied in this case, relying on the following quote from *Snow:* "a plan does confer discretion when it [i.e. the Plan] 'includes *even one* important discretionary element, and the power to apply that element is unambiguously retained by its administrator.'" *Snow,* 87 F.3d at 330 (quoting *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1325 (9th Cir.1992)) (emphasis added). However, upon further reflection, and aided by the parties' supplemental briefing on this issue, the Court now concludes that the better reasoned position is that a plan administrator must have actually exercised some discretion in order for their decision to be entitled to abuse of discretion review.

Initially, it must be noted that the default rule is de novo review. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948 (review is to be under "de novo standard *unless* the benefit plan gives the administrator or fiduciary dis-

cretionary authority to determine eligibility for benefits or to construe the terms of the Plan") (emphasis added). But, it is also true that the Ninth Circuit has stated that "[w]e have not been stingy in our determination that discretion is conferred upon plan administrators." *Snow,* 87 F.3d at 330. And, as described above, the Ninth Circuit has also stated that "a plan does confer discretion when it [i.e. the Plan] 'includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator.'" *Snow,* 87 F.3d at 330 (quoting *Bogue,* 976 F.2d at 1325).

This language does not mandate a finding in CNA's favor. Although the Ninth Circuit has held that a plan with even one discretionary element requires abuse of discretion review, it did not hold that this abuse of discretion review would necessarily apply to *every* decision made by the plan administrator, whether such decision was governed by the discretionary element or not. This Court finds that a better reading of *Snow* is that a plan with any single discretionary element requires abuse of discretion review, but only as to those decisions made by the administrator *governed by the discretionary provisions of the plan.*

This reading of *Snow* is a plausible reading, that does not require a tortured construction of *Snow's* holding. Moreover, this reading comports with common sense, as well as with the underlying rationale for the abuse of discretion standard. If a plan is wholly non-discretionary, then under *Firestone* courts reviewing the administrator's decisions apply a de novo standard of review. In contrast, take for example a second plan, identical to the first in every way except for one small grant of discretionary authority as to one particular matter. Certainly a review of the administrator's decision as to that particular matter should be under the abuse of discretion standard. Such is the teaching of *Snow.* However, it makes no sense to say that every other decision by the administrator of this plan, no matter how far removed from the discretionary element, should be entitled to the same deferential standard of review. Neither *Snow* nor *Firestone* require

this outcome, and this Court declines CNA's suggestion that this is the law.

The rationale behind the use of abuse of discretion review is that where an administrator has discretion to make particular determinations, reviewing courts should not second guess the exercise of that discretion. *See Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324–25 (9th Cir.1992). Rather, courts should inquire only as to whether the administrator abused its discretion in making its decision. This rationale simply does not apply in cases like the one at bar, where the administrator has discretion in certain limited areas, but then makes decisions in entirely different areas. This Court has held that CNA has discretion in determining whether a claimant is qualified for "other" employment. Consistently with *Snow*, any review of CNA's decisions regarding a claimant's qualification for other employment will be made under the abuse of discretion standard in order to avoid second guessing CNA's decision. However, Plaintiff's qualifications for other employment are not in issue in this case. CNA made an entirely different determination about her claim; one not involving discretion, as described above. Thus, there is simply no reason for this Court to give deference to this determination.

The Court's conclusion is bolstered by the Sixth Circuit cases *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372 (6th Cir.1996) and *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392 (6th Cir.1991). There, the Sixth Circuit concluded that a plan may grant discretion over some aspects without granting such discretion over others, and as a result, the correct standard of review might be de novo for some decisions, and abuse of discretion for others. As discussed above, this Court does not find this idea to be in "complete contravention," (Def.'s Supp.Opp. at 7 n. 4), of *Firestone*'s holding. Moreover, the cases cited by CNA in its supplemental opposition are of no assistance to it. (*See* Def.'s Supp.Opp. at 5 n. 3.) In all these cases, the grant of discretion was in the same area as the decision being reviewed.

■ For the above reasons, this Court holds that because the only discretion provided to CNA by the Plan involved matters extraneous to the decision being challenged in this case, CNA did not exercise any discretionary authority in its determination of Plaintiff's eligibility for benefits; hence, the correct standard of review is de novo. Consequently, the Court GRANTS Plaintiff's first Motion in Limine.

## B. Admissibility of Evidence Outside the Administrative Record

■ Having determined that the appropriate standard of review is de novo, the next issue is what evidence this Court may consider in making that review. In most abuse of discretion cases, evidence outside the administrative record is completely inadmissible. *See Snow*, 87 F.3d at 332; *Taft*, 9 F.3d at 1471. However, the rule in de novo cases is not so absolute. The leading Ninth Circuit case on this point is *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938 (9th Cir.1995). In *Mongeluzo*, the court held that new evidence, not previously considered by the administrator, may be considered by the court in certain circumstances to "enable the full exercise of informed and independent judgment." *Id.* at 943. However, the court made it clear that looking at new evidence was to be the exception, not the rule:

> [W]e adopt a scope of review that permits the district court *in its discretion* to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefits decision. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator at the time of the determination.

*Mongeluzo*, 46 F.3d at 943–44 (emphasis in original) (quoting *Quesinberry v. Life Ins. Co. of N. America*, 987 F.2d 1017, 1025 (4th Cir.1993) (en banc)). The court added that "[w]e emphasize that a district court should not take additional evidence merely because someone at a later time comes up with new evidence...." *Id.* at 944.

In *Mongeluzo* the Ninth Circuit held that the district court should have accepted new evidence, because the plan administrator had made its determination under a misconception of the law (the meaning of "mental illness" or "functional nervous disorder"). Having corrected that misconception, the district court then needed new evidence in order to fully review the administrator's determination. However, in the case at bar, CNA was not operating under any similar misconception of law while making its determination. Rather, CNA apparently determined that Thomas had not met her burden of providing proof of her entitlement to benefits. The question in this case is whether that decision was correct.

■ In every case there will always be evidence that is not part of the administrative record but which is relevant. *Mongeluzo* was concerned that the purposes of ERISA would be frustrated by courts conducting extensive factfinding in routine cases. Consequently, absent unusual circumstances such as the misconception of law in *Mongeluzo*, district courts should only consider the administrative record in conducting de novo review. In the case at bar there has been no showing of such unusual circumstances; hence, review in this case will be limited to the existing record.[3] As a result, Plaintiff's second *Motion in Limine* is hereby DENIED and Defendants' Motion in Limine is hereby GRANTED.

### C. Temporal Scope of This Court's Review

Defendants have conceded that if the Court determines that the Plaintiff should not have been denied benefits, its determination is limited to the first 24 months of the Plaintiff's disability. In that event, the case would be remanded back to CNA to make the initial determination of disability beyond that period. Consequently, Plaintiff's Third Motion in Limine is hereby GRANTED.

---

**3.** Although the Court has not yet been provided with the entire administrative record, it appears from the parties' papers that it contains reports of several doctors who have examined Plaintiff.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the appropriate standard of review is de novo. Thus, the Court hereby GRANTS Plaintiff's first Motion in Limine.

The Court further holds that no additional evidence will be admitted during trial, which will consist solely of the administrative record, briefs, and argument of counsel. Thus, Plaintiff's second Motion in Limine is hereby DENIED, and Defendants' Motion in Limine is hereby GRANTED.

Finally, the Court finds that its review is limited to the first 24 months of benefits. Should the Court determine that CNA wrongfully denied Plaintiff's benefits, it will remand to CNA for a determination in the first instance of Plaintiff's entitlement to benefits beyond that 24 month period. Consequently, Plaintiff's third Motion in Limine is hereby GRANTED.

**IT IS SO ORDERED.**

From those reports, and the rest of the record, this Court can conduct an adequate de novo review.